IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-02500-CBS

LEROY BUNN AND MARK NEWLAND,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER, COLORADO,

      Defendant.

## ORDER

Magistrate Judge Shaffer

### INTRODUCTION

Plaintiffs Leroy Bunn and Mark Newland (collectively "Plaintiffs") seek monetary damages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, on the basis that the City and County of Denver ("the City") failed to provide overtime pay for the hours they worked in excess of forty hours per week. This matter comes before the court on the dueling motions for summary judgment filed by the parties. (Docs. 16 & 17). For the following reasons, the court denies both motions.

### PROCEDURAL HISTORY

Plaintiffs filed their Complaint (Doc. 1) on September 10, 2014. In their Complaint, they contend that (1) they have been misclassified as "exempt" employees; and (2) the City has failed to properly pay them overtime wages. They allege that — despite being classified as exempt — they perform the same work as their non-exempt co-workers, are not managers, do not exercise

1

independent judgment or discretion, and apply only well-established techniques, procedures, and specific standards described in manuals or other sources. *See* Doc. 1 at ¶¶ 15(a)-(h), 18-19, 41. They contend that they have been misclassified and, as a result, are entitled to overtime payment for the on-call hours that they have worked. *Id*. at ¶¶ 52-60.

Following a period of discovery, Plaintiffs and the City filed competing motions for summary judgment. Docs. 16 & 17. In its motion, the City argues that the undisputed material facts establish that Plaintiffs are properly classified as administrative employees and are, therefore, exempt from the provisions of the FLSA. Doc. 16 at 16-22. And the City contends that, in the alternative, Plaintiffs are exempt from the FLSA under the "computer employee exemption." *Id*. at 22-26. In their motion for partial summary judgment, Plaintiffs contend that, based on the undisputed facts, the City cannot meet its burden of establishing that they are exempt from the FLSA. *See generally* Doc. 17. Plaintiffs also contend that this court should not address the City's arguments regarding the computer employee exemption because the City neither included this defense in the original scheduling order nor requested to amend the scheduling order. Doc. 23 at 2-3. The parties filed responses (Docs. 22 & 23) in opposition to the competing motions, as well as replies (Docs. 26 & 27) in support of their own respective motions.

## BACKGROUND

Plaintiffs are both employed as "911 Systems Administrators II" in the 911 Communications Center within the City's Department of Safety. They work full-time and undisputedly earn more than $455 per week. According to the parties' filings, Plaintiffs' duties include installing and configuring operating systems, troubleshooting and resolving issues with servers and databases, researching necessary changes, maintaining hardware and software,

desktop support, creating "playbooks" for various operating systems, and working with vendors and customers. In addition, both Plaintiffs are required to be "on-call" once every four weeks; however, they are not paid overtime wages for these on-call hours because they are classified as "exempt" employees.

In March 2014, Plaintiffs and two co-workers, Christopher Beard and Barry Bjork[1], received new titles[2] as well as upward salary adjustments. Mr. Beard and Mr. Bjork were both classified as "non-exempt," while Plaintiffs remained "exempt" from the FLSA overtime provisions. Plaintiffs, however, allege that there is no difference between the duties that they perform and the duties performed by Mr. Beard and Mr. Bjork. They contend that they have been misclassified and are, therefore, entitled to overtime payment for all of the hours that they are required to be on-call.[3]

## LEGAL STANDARDS

### A.   Summary Judgment Pursuant to Fed. R. Civ. P. 56

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material

---

[1] Mr. Beard and Mr. Bjork are each employed as "911 Systems Administrators I." This title was changed from "Associate Information Technology Systems Administrator."

[2] Plaintiffs' position was previously titled "Senior Information Technology Systems Administrator."

[3] Because the court concludes that there is a disputed issue of material fact as to whether Plaintiffs are properly classified as administrative employees, it does not reach the question of whether Plaintiffs are entitled to pay for the entire time they are on-call.

fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

**B.     The Fair Labor Standards Act and the Administrative Employee Exemption**

Under the FLSA, employers are required to pay their employees no less than one and one-half times their regular hourly rate for each hour the employee works in excess of forty hours per week. 29 U.S.C. § 207(a)(1). However, this provision does not apply to "any employee in a bona fide . . . administrative . . . capacity." 29 U.S.C. § 214(a)(1). A bona fide administrative employee is an employee (1) who is compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with regard to matters of significance. 29 C.F.R. § 541.200(a).

According to the regulations, an employee's work is "directly related to the management or general business operations" if the employee performs work directly related to assisting with the running or servicing of the business, as opposed to working on a production line or selling a

product in a retail or service establishment. 29 C.F.R. § 541.201(a). The phrase "discretion and independent judgment" involves the "comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The term "matters of significance" refers to the level of importance or consequence of the work performed. *Id*. The exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. That an employee's decision may be subject to review does not mean that the employee is not exercising independent judgment. *Id*. However, the exercise of discretion must involve "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e).

In their briefs, the parties have cited numerous cases regarding the application of the FLSA's administrative exemption. And they have argued extensively regarding whether their respective cases are relevant to — or distinguishable from — the specific facts at issue here. Factual scenarios aside, however, all of these cases are clear that "[i]n FLSA cases, a court must first determine the employee's primary duty, and then determine whether that primary duty disqualifies the employee from [the] FLSA's protections." *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012) (citations omitted). Although the time spent performing each duty is a useful guide in determining whether a duty is primary, there is no requirement that an employee spend more than 50 percent of his or her time performing exempt work. 29 C.F.R. § 541.700 (b). The regulations also recommend examining other factors such as "the relative importance of the exempt duties as compared with other types of duties; . . . the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."

*Id*. "Because the primary duty inquiry presents a question of fact, summary judgment is proper only if there [is] no genuine dispute regarding plaintiffs' primary duties." *Maestas*, 664 F.3d at 828; *see also Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 649 (6th Cir. 2013) (noting that whether duties required discretion and independent judgment involved questions of fact).

## DISCUSSION

**I.     Computer Employee Exemption**

In its motion, the City contends for the first time that Plaintiffs are exempt under the computer employee exemption of the FLSA. This provision specifically exempts "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker." 29 U.S.C. § 213(a)(17). The court declines to address this argument, but not for the reasons articulated by Plaintiffs.

In its motion, the City lists the elements of the computer employee exemption and then, in some detail, describes two cases that have applied this exemption. Doc. 16 at 22-25. However, the brunt of the City's argument regarding the application of the exemption is limited to a single sentence: "Plaintiffs also met the standard for the computer professional exemption, through testimony of Mr. Gonzales, Mr. Garcia and Mr. Cardenas." *Id*. at 25. The City does not cite any specific evidence in support of this assertion, nor does it offer any analysis other than a conclusory restatement of the statutory elements. *Id*. at 25-26. Indeed, the City fails to apply either of its cited cases to the facts at issue here. It simply states, without more, that the job duties involved in those cited case are analogous to the Plaintiffs' duties in this case. *Id*. The court will not address such undeveloped and perfunctory arguments.[4] *See Murrell v. Shalala*, 43 F.3d 1388,

---

[4] The court's conclusion with regard to the motion for summary judgment does not preclude the City from presenting evidence that might be relevant to this defense at trial. As the court noted at the September 15, 2015 hearing (Doc. 28), the court may amend the pleadings to conform them to the evidence presented at trial. *See* Fed. R. Civ. P. 15(b).

1389 n.2 (10th Cir. 1994) (finding that inadequately framed or undeveloped arguments are insufficient to invoke review).

**II.     Administrative Exemption**

With regard to the administrative exemption, the court has reviewed, in its entirety, the voluminous record in light of the relevant law, and finds that it cannot grant either motion for summary judgment.

Here, there is conflicting evidence in the record as to what Plaintiffs' primary duties specifically entail. Although it is undisputed that Plaintiffs' duties include installing and configuring operating systems, the job description[5] for a Senior Information Technology Systems Administrator (Doc. 16-4) implies that Plaintiffs' responsibilities went beyond simply "applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). In particular, the job description suggests that Plaintiffs work on important, complex projects and do, in fact, exercise discretion in performing their duties. Specifically, the description states: "Guidelines are generally but not always clearly applicable, requiring the employee to exercise judgment in selecting the most pertinent guideline, interpret precedents, adapt standard practices to differing situations, and recommend alternative actions in situations without precedent." Doc. 16-4 at 1. *See also Id*. at 2 (describing the Plaintiffs' essential duties as including (among other things) "Develop[ing], test[ing], and implement[ing] complex scripts"; "Develop[ing], maintain[ing], and publish[ing] complex custom reports"; "perform[ing] lead work over subordinate employees or project management duties"); Doc. 17-6 at 6 (Plaintiff

---

[5] Plaintiffs and the City have submitted documentary evidence in support of their respective motions for summary judgment. The court notes that none of these documents are accompanied by affidavits that would authenticate them or support their admissibility. However, given that neither party has objected to the use of these documents, the court considers them.

Newland testifying that the job description was accurate to the extent it states the guidelines are not always applicable).

In addition, the City offered evidence that Plaintiffs both created "playbooks" and wrote complex operating procedures that were not otherwise available from vendors. *See* Doc. 16-11 at 22-23, 32, 35-37 (Anthony Gonzales testifying that Plaintiffs wrote complex standard operating procedures); *see also* Doc. 26-1 at ¶ 8 (David Garcia attesting that Plaintiffs wrote playbooks specific to the 911 Communications Center that did not have significant language from vendors). These projects apparently required independent research and initiative on the part of both Plaintiffs. Doc. 16-11 at 30-31 (Anthony Gonzales testifying regarding the extensive research performed by Plaintiff Bunn); *see also* Doc. 26-2 at ¶6 (Anthony Gonzales attesting that Plaintiffs are required to "take lead responsibility on tasks, . . . provide additional support and research on tasks, and . . . independently maintain expertise on certain tasks").

Further, Plaintiffs were considered to be "lead" technicians, which — according to the evidence — entailed "planning, [] coordinating, [] scheduling, working with . . . customers to make sure the requirements are understood, working with a vendor to make sure they understand all of the processes or steps they need to go through in order to complete it successfully." Doc. 22-4 at 13 (testimony of David Garcia regarding the responsibilities of a lead technician). And the evidence shows that Plaintiff Newland was responsible for training Mr. Bjork on certain processes. Doc. 22-4 at 6 (testimony of David Garcia).

The record also suggests that Plaintiffs exercised, at least some, discretion in performing their duties. Doc. 16-11 at 22-23, 38-39 (Anthony Gonzales testifying that Plaintiffs chose the procedures that they wanted to write); Doc. 16-15 at 39 (David Garcia testifying that Plaintiffs chose certain playbooks to write and were assigned others); *see also* Doc. 17-6 at 6 (Plaintiff

Newland testifying that they don't always have to go to a supervisor when troubleshooting issues). And the record also shows that Plaintiffs worked independently with little oversight. Doc. 26-1 at ¶ 11 (David Garcia attesting that after making recommendations and receiving approval, "Plaintiffs carry out the projects with little oversight"); *see also* Doc. 16-4 (job description stating that the "employee receives assignments and is expected to carry them out through to completion with substantial independence"); Doc. 16-6 at 16 (Plaintiff Newland testifying that he "tend[ed] to agree" with the portion of the job description stating that he exercised "substantial independence").

However, Plaintiffs' affidavits[6] and portions of their deposition testimony characterize their primary duties quite differently. As described by Plaintiffs, their duties involve applying specific standards or performing routine work over which they had little discretion. Doc. 16-1 at 21 (Plaintiff Bunn testifying that Anthony Gonzales was the one who made the decisions); Doc. 16-6 at 16 (Plaintiff Newland testifying that — although he had independence — managers were very involved in all of the projects); Doc. 23-1 at ¶¶ 15, 17, 20 (affidavit of Plaintiff Newland attesting that he used well-established techniques to perform his duties and that David Garcia "micro-managed" his performance); Doc. 23-2 at ¶ 24 (affidavit of Plaintiff Bunn attesting that he is closely supervised by David Garcia and requires his approval for all decisions).

Both Plaintiffs have disputed the complexity of their duties. Doc. 16-1 at 22 (Plaintiff Bunn characterizing his work as transcription); Doc. 16-6 at 20 (Plaintiff Newland testifying that

---

[6] In their response to the City's motion, Plaintiffs each submitted an affidavit challenging many of the City's "undisputed" facts. Although it is not entirely clear, the City seems to contend that these affidavits are attempting to create "sham" issues of fact. The court concludes, however, that these affidavits do not contradict the Plaintiffs' prior deposition testimony, and the City has not offered any specific citations or argument otherwise. Further, portions of these affidavits are directly addressed to the City's new arguments regarding the computer employee exception, as well as clarifying certain portions of the deposition testimony that Plaintiffs contend has been misconstrued. Therefore, the court finds that these are not "sham" affidavits that must be disregarded.

he follows vendor-provided instructions that anyone could use); Doc. 17-6 at 6 (Plaintiff Newland characterizing troubleshooting as going through a predetermined checklist of questions); Doc. 23-1 at ¶¶ 16, 17 (Plaintiff Newland attesting that some of the procedures he wrote were very simple and that they were based on existing vendor procedures); Doc. 23-2 at ¶¶ 5-8, 11, 14 (Plaintiff Bunn attesting that his tasks are not necessarily more complicated than those done by non-exempt employees).

For example, Plaintiff Bunn testified that the majority of his time is spent installing and configuring operating systems and working on workstations — which included replacing monitors and keyboards, and rewiring desks. Doc. 16-1 at 31. Indeed, he characterized himself as a "desktop specialist." *Id.*; *see also* Doc. 23-2 at ¶11 (characterizing one of his projects as "data entry and correction"). Likewise, Plaintiff Newland attested that the majority of his time is spent installing and configuring operating systems. Doc. 23-1 at ¶¶ 3-4. He also testified that the process of updating certain systems merely involved following a set of vendor-provided instructions. Doc. 16-6 at 20. In addition, Plaintiffs both testified that the task of "creating processes and procedures" was more properly characterized as simply documenting steps that already existed for certain procedures. Doc. 16-6 at 18 (testimony of Plaintiff Newland); Doc. 16-1 at 22 (Plaintiff Bunn characterizing the process of "creating" procedures as transcribing existing manuals).

Further, Plaintiffs have maintained that the work they perform is the same as the work performed by employees who have been classified as non-exempt. Doc. 17-7 at 5, 10 (Plaintiff Bunn testifying the associate IT administrators and the senior IT administrators performed the same work); Doc. 23-1 at ¶ 9 (Plaintiff Newland attesting that they have the same job as non-exempt employees). And Plaintiff Newland insisted that being a "lead" technician meant that he

10

was the point of contact for the vendor, as opposed to having any supervisory authority over any other employees. Doc. 17-6 at 7.

Based upon the foregoing, the court finds that the parties have presented sufficient evidence to create a genuine issue of material fact as to the nature of Plaintiffs' duties. Resolution of this dispute necessarily asks the court to make a credibility determination. But it is not the court's role to make such determinations at this stage of the litigation. *See Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1153 n. 2 (10th Cir. 2010) (stating that the district court correctly noted that it was inappropriate to weigh the credibility of the sworn deposition testimony in evaluating entitlement to summary judgment and citing *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000) ("It is axiomatic that a judgment may not evaluate the credibility of witnesses in deciding a motion for summary judgment.")). The exact nature of Plaintiffs' duties is material to determining their discretion and independent judgment and, ultimately, to determining whether the administrative exemption to the FLSA's overtime requirement will apply. Consequently, entry of summary judgment is inappropriate and a trial is required.

## CONCLUSION

WHEREFORE, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. 16) is DENIED. It is FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Doc. 17) is DENIED.

DATED at Denver, Colorado, this 20th day of October, 2015.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge